Mr. Justice Field
delivered the opinion of the court:
In March, 1854, the appellant was appointed consul of the. United States at the city of Algiers, in the northj-of Africa. He soon afterward entered upon the discharge of his duties, and continued in office until November, 1859, when he resigned* During this period he received no salary from the Government, nor did he make any return to the Government of fees received by him as consul, but he was paid the necessary expenses of his office, and was allowed by the Department of State to transact business as a merchant. While in office he preferred no claim for any salary or compensation for his services, nor did he afterward advance any such claim until July, 1865. He then presented his claim for four thousand dollars a year as salary to the Treasury Department. That Department referred the matter to the State Department, and Mr. Seward, then Secretary of State, informed the appellant that his claim could not be allowed, and its payment was accordingly refused. He then instituted the present action to recover the amount.
His claim is founded upon the act of Congress “ fixing the compensation of public ministers and of consuls residing on the coast of Barbary, and for other purposes,” passed on the 1st of May, 1810. That act provides that the President shall not allow “ to any consul who shall be appointed to reside at Algiers a greater sum than at the rate of four thousand dollars per annum as a compensation for all his personal services and expenses.”
The language of this act would seem to indicate that the extent of the compensation to be made to the consul was, within the limits prescribed, subject to the control of the President, and that the amount specified was not payable absolutely to the person appointed. But assuming, for the purposes. *185 of tbis case, that the act fixes absolutely the rate of compensation, we do not think it sustains the claim of the appellant.
When that act was passed Algiers was a part of one of the Barbary States of that name, and it is evident from an examination of its provisions that the act was intended to apply to a consulate at that place only so long as it belonged to one of the Barbary powers. Tears before the appointment of the appellant, Algiers, and the country of which it was the principal city, had become a province of France.
A great distinction has always been made between consuls to Mohammedan and consuls to Christian countries, both in the powers intrusted to them and in the duties with which they are djirged. The full reciprocity which, by the general rule of international law, prevails between Christian states in the exercise of jurisdiction over the subjects or citizens of each other in their respective territories, is not admitted between a Christian state and a Mohammedan state in the same circumstances; and in our treaties with Mohammedan powers express stipulations are made for the enjoyment by our citizens of certain exterritorial rights with respect to their persons and property. While, therefore, in Christian countries consuls are little more than commercial agents, in Mohammedan countries they are clothed with diplomatic and even with judicial powers. Consuls to Christian countries are often allowed to engage in business, but consuls to Mohammedan countries are restricted to the duties of their offices, are paid a stated salary, and are prohibited from entering into commercial transactions. — (Halleck on Inter. Law, chap. 10, sec. 21, 22; Opinions of Attorneys-General, vol. 7, 346-348.)
Thus, in the treaty with the Dey of Algiers, made in 1816, (8 Stat. L., 244,) it was stipulated that disputes between citizens of the United States should be decided by the consul; and in case a citizen of the United States should kill, wound, or strike a subject of Algiers, or, on the contrary, a subject of Algiers should kill, wound, or strike a citizen of the United States, the law of the country should u take, place, and equal justice” be rendered, the consul assisting at the trial; and that the property of a citizen of the United States dying in Algiers should be under the immediate direction of the consul, unless otherwise disposed of by will.
Provisions like these are not generally made in treaties be *186 •tween Christian nations; and they impose duties upon consuls which are not exacted of those officers when acting as mere commercial agents. It is plain that the duties for which a consul, inhibited from engaging in commerce, and charged with diplomatic and judicial functions, was required at Algiers, while that place formed part of a Mohammedan power, and this treaty was in force, ceased when that country passed under the jurisdiction of a Christian nation, and the treaty with the Dey thus expired. The Department of State from that time has treated the consulate there as one without salary, to which the provisions of the act of May, 1810, were no longer applicable; one which allowed the incumbent, as consuls in the countries subject to France are allowed, to engage in bri^ness, and only entitled to receive as compensation for his services such fees as he might collect, besides the necessary expenses of his office. — (8 Stat. L., p. 106; 10 Stat. L., p. 992.)
The construction thus given by the Secretary was impliedly sanctioned by the act of Congress of March 1, 1855, “to remodel the diplomatic and consular systems of the United States,” (10 Stat. L., p. 621,) and was expressly sanctioned by the act of August 18, 1866, to regulate those systems. — -(11 Stat. L., p. 52.)
The act of 1810, after specifying the compensation which might be allowed to the consul appointed to reside at Algiers, designated the sum which might be allowed to other consuls appointed to reside in any other of the states on the coast of Barbary, thus making provision for all the Barbary states. The ports of these states, where consuls were appointed to reside, were Tangiera, Algiers, Tripoli, and Tunis. Now, in the act of March 1, 1855, compensation is fixed, under the head of “Barbary States,” for consuls to all those places except Algiers, and no provision is anywhere made for the appointment of a consul at that place, or for compensation to one there, showing that Congress did not then think that a consul with a salary there existed, or was there required.
The act of August 18, 1856, enumerates the same places, under the same head of Barbary States, at which consuls are to be appointed to reside, and designates their compensation, omitting, as in the act of 1855, the city of Algiers, and provides that consuls not thus enumerated shall be entitled, as compensation for their services, to such fees as they may col *187 leeti, a provision wliicli in effect declares, when read in connection with the preceding clauses of tlie act, that they shall receive no other compensation. And this latter act repeals all acts and parts of acts inconsistent with its provisions.
We find no error in the judgment of the Court of Claims, and it is accordingly affirmed.